NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TZVI SMALL, M.D.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>OXFORD HEALTH INSURANCE, INC., *et al.*,<br><br>　　　　　　Defendants. | Civil Action No.: 18-13120 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants Oxford Health Insurance, Inc. and United Healthcare Services, Inc.'s Motion to Dismiss Plaintiff Tzvi Small, M.D.'s Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8). Plaintiff submitted opposition. (ECF No. 11). Despite being granted additional time by this Court, (ECF No. 15), Defendants did not file a reply. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court hereby denies Defendants' Motion in part, with the exception that the Court shall dismiss Plaintiff's claim for *quantum meruit*.

### I.　　BACKGROUND[1]

Patient "D.H." is insured by and receives medical benefits from Defendants, which are insurance companies with their principal places of business in Connecticut. (Compl. ¶¶ 2–3, 7;

---

[1] This background is derived from Plaintiff's Complaint, (ECF No. 1-1 ("Compl.")), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

ECF No. 1 ¶ 7). Plaintiff is a plastic surgeon who practices in New Jersey. (Compl. ¶¶ 1, 6, 18). Plaintiff is not a participating provider in Defendants' insurance network. (Compl. ¶ 14). Plaintiff alleges that he received written authorization from Defendants to perform a "medically-necessary" breast reconstruction surgery on Patient. (Compl. ¶¶ 16–17). Plaintiff performed said surgery on December 19, 2016. (Compl. ¶ 17).

After the surgery, Plaintiff requested payment from Defendants in the amount of $129,600, which according to Plaintiff "represents [the] normal and reasonable charges for the complex procedure performed by a Board-Certified Plastic Surgeon and Surgeon practicing in New Jersey." (Compl. ¶ 19). However, Plaintiff claims that Defendants only paid around $10,639, which left a remaining balance of $118,960.75. (Compl. ¶ 20). Plaintiff alleges that Defendants: (1) were aware that Plaintiff was not a provider in their network; (2) did not disclose to Plaintiff that they would not pay the full amount of the surgery; and (3) induced Plaintiff to perform the surgery with no intention of paying the full amount. (Compl. ¶ 21).

In addition to the above allegations, Plaintiff also alleges that Medical Audit and Review Solutions ("Review Solutions") contacted him at some point after the surgery. (Compl. ¶ 23). According to Plaintiff, Review Solutions was an agent of Defendants and attempted to resolve Plaintiff's claim against Defendants for the cost of the surgery. (Compl. ¶ 23). Plaintiff alleges that Review Solutions offered Plaintiff $31,055.20 if Plaintiff forgave the remaining balance of the surgery. (Compl. ¶ 23). Plaintiff accepted this agreement, which was allegedly memorialized in writing ("the Agreement"). (Compl. ¶¶ 23–24). Specifically, the Agreement was dated January 9, 2017 and stated:

> Pursuant to our recent conversation, by signing below, [Plaintiff] agrees to: (i) accept the Agreed Amount [of $31,055.20] (less deductible, co-insurance, co-payment or other patient responsibility or non-covered services as defined by the plan) as payment in full

2

for claims/bills from plans serviced by MultiPlan that are submitted by [Defendants] and determined to be eligible for the services rendered to the Patient on the dates listed above; (ii) not to balance bill the Patient for the difference between the Amount of the Claim/Bill and the Agreed Amount; and (iii) reduce the liability of the Patient and [Defendants].

By signing below, the Provider agrees and acknowledges that: (i) [Review Solutions] and MultiPlan are not payors and are not financially responsible for any payments due to [Plaintiff]; (ii) the payment of benefits, if any, is subject to the terms and conditions of the Patient's plan; and (iii) this agreement does not constitute, nor should it be construed as a guarantee of benefit payment by [Defendants]. [Plaintiff] retains the right to bill the Patient (or financially responsible party) for items not covered under the Patient's benefit plan.

(ECF No. 11-10 at 2 ("Agreement")).

Despite the Agreement, Plaintiff claims that Defendants never made any payment beyond the original amount of approximately $10,639. (Compl. ¶ 26). Plaintiff argues that Defendants' failure to pay the remaining $20,415.92 was a breach of the Agreement. (Compl. ¶ 27). Furthermore, Plaintiff claims in the alternative that the course of conduct between the parties, and particularly Defendants' authorization of the surgery, created an implied contract in which Defendants agreed to pay "the fair and reasonable rates for" performing the surgery, *i.e.*, the remaining balance of $118,960.75. (Compl. ¶¶ 29–33).

Accordingly, Plaintiff brought suit in New Jersey Superior Court, alleging the following causes of action: (1) Breach of the Agreement ("Count One"); (2) Breach of Implied Contract ("Count Two"); (3) Promissory Estoppel ("Count Three"); (4) Account Stated ("Count Four"); and (5) *Quantum Meruit* ("Count Five"). (Compl. ¶¶ 22–51). Defendants removed the action to this Court. (ECF No. 1). Now, Defendants move to dismiss Plaintiff's Complaint.

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must: (1) "tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. ANALYSIS

### A. ERISA Preemption

Defendants argue that Plaintiff's claims are preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), because Patient's insurance plan is

governed by ERISA. State law claims are preempted by ERISA under two "separate but related" standards—either completely or expressly. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 270 (3d Cir. 2001). As explained in more detail below, Defendants have not persuaded the Court that ERISA preempts Plaintiff's claims under either standard.

1. Complete Preemption

A state law claim is completely preempted by ERISA "only if: (1) the plaintiff could have brought the claim under § 502(a) [of ERISA]; and (2) no other independent legal duty supports the plaintiff's claim." *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (citing *Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)). The first prong of this analysis, referred to as the *Pascack* test, requires the Court to determine whether the plaintiff would have standing to bring a claim under ERISA. *E. Coast Advanced Plastic Surgery v. AmeriHealth*, No. 17-8409, 2018 WL 1226104, at *2 (D.N.J. Mar. 9, 2018) (quoting *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, No. 17-536, 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017)). In making this determination, the Court must look at whether Plaintiff "is the type of party that can bring a claim pursuant to" ERISA, and whether Plaintiff's claims "can be construed as . . . colorable claim[s] for benefits" under ERISA. *Id.*

Here, Plaintiff's claims do not satisfy the first prong of the *Pascack* test. Plaintiff is not a beneficiary or participant of Patient's ERISA-regulated plan, and Plaintiff does not allege that he was assigned benefits to Patient's ERISA-regulated plan. (Compl. ¶ 14). Rather, Plaintiff is an out-of-network healthcare provider asserting state law contract claims on his own behalf, not on behalf of Patient. (*See generally* Compl.). Additionally, Plaintiff's claims cannot be construed as "colorable claim[s] for benefits," as he "does not challenge the type, scope or provision of benefits

under" Patient's ERISA-regulated plan, but rather "only asserts [his] right as a third-party provider to be reimbursed for pre-authorized medical services [he] rendered" to Patient. *E. Coast Advanced Plastic Surgery*, 2018 WL 1226104, at *2. While ERISA "preempts claims regarding coverage or denials of benefits" under a plan, it "does not . . . preempt claims over the amount of coverage provided, which includes disputes over reimbursement." *Id.* at *5. Because Plaintiff's claims do not meet the first prong of the *Pascack* test, the Court concludes, without reaching the second prong, that Plaintiff's state law claims are not completely preempted by ERISA.

2. Express Preemption

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan." 29 U.S.C. § 1144(a). "[T]he phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (quoting *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985)). The Supreme Court has described two categories in which ERISA expressly preempts a state law claim: (1) "if [a state law claim] has a 'reference to' ERISA plans" or (2) if a state law claim "has an impermissible 'connection with' ERISA plans." *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (citations omitted).

In a recent and nearly identical case out of this District, the Court denied an insurance company's motion to dismiss, concluding that a plaintiff healthcare provider's state law claims, premised on the defendant's preauthorization of a medical procedure, were not preempted by ERISA. *Glastein v. Aetna, Inc.*, No. 18-9262, 2018 WL 4562467 (D.N.J. Sept. 24, 2018). The Court found that the plaintiff's claims did not "refer to" an ERISA plan because "the Complaint does not claim that Plaintiff was a contracting party to any ERISA plan" nor "allege that payment

[was] due to [Plaintiff] according to the terms of an ERISA plan." *Id.* at *2. The allegations of an implied contract "[did] nothing to suggest" that the plaintiff's claims would "require examination of an ERISA plan." *Id.* The Court also concluded that the state law claims did not have an "impermissible connection with" an ERISA plan, since the "central purpose of ERISA is to protect plan participants and beneficiaries," and "claims brought by a provider against an insurance company do not implicate" that goal. *Id.* at *3.

The Court reaches the same conclusion here. Plaintiff's claims do not "relate to" an ERISA-regulated plan because the Complaint does not seek damages pursuant to the terms of Patient's benefit plan. Indeed, nothing in the Complaint directs the Court to consider the terms of Patient's benefit plan. Instead, the Complaint seeks damages arising from an independent relationship between Plaintiff and Defendants. Although Defendants argue to the contrary that Plaintiff is seeking additional benefits from Defendants for out-of-network services and that the Agreement mentions benefit payments that are governed by Patient's plan, (ECF No. 8-3 at 19–20), the Court's analysis is not altered here because, at this stage in the proceedings, the Court is concerned with the four corners of the Complaint, which bases Defendants' liability solely on representations not facially related to Patient's insurance plan.[2] Accordingly, the Court finds that Plaintiff's claims are not completely or expressly preempted by ERISA.

## B. Breach of the Agreement

To establish a *prima facie* case for Count One, Plaintiff must show that: (1) a contract existed between the parties; (2) a party breached the contract; (3) the breach resulted in damages; and (4) the party alleging the breach performed its obligations in accordance with the contract.

---

[2] To the extent that Defendants raise arguments regarding the language of the Agreement, as further discussed below *supra*, Section III.B.2., said language is better understood at this stage in the proceedings as part of a settlement payment that was separate from any ERISA-governed plan.

7

*Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citations omitted). In the absence of any ambiguity, the meaning of a contract can be interpreted as a matter of law. *J.I. Hass Co. v. Gilbane Bldg. Co.*, 881 F.2d 89, 92 (3d Cir. 1989) (citations omitted).

Defendants argue that Plaintiff has failed to state a claim for Count One because Plaintiff has not demonstrated: (1) that Review Solutions was Defendants' agent; and (2) that Defendants manifested an intention to be bound by the Agreement's plain terms. (ECF No. 8-3 at 8–9). The Court addresses each of these arguments in turn.

1. <u>Authority to Enter into the Agreement</u>

In order for an agreement between an agent and a third party to bind the principal under New Jersey law, Plaintiff must show that the agent had either

> (1) express or real authority [that] has been definitely granted; (2) implied authority—that is to do all that is proper, customarily incidental and reasonably appropriate to the exercise of the authority granted; or (3) apparent authority, such as where the principal by words, conduct, or other indicative manifestations has "held out" the person to be its agent.

*Derbin v. Access Wealth Mgmt., LLC*, No. 11-812, 2011 WL 4751992, at *6 (D.N.J. Oct. 7, 2011) (citing *Hoddeson v. Koos Bros.*, 47 N.J. Super. 224, 232 (App. Div. 1957)).

Here, Defendants claim that Plaintiff has not set forth any allegations that Defendants expressly, implicitly, or apparently authorized Review Solutions to enter into the Agreement with Plaintiff. (ECF No. 8-3 at 8–9). Instead, according to Defendants, Plaintiff merely offers the conclusory statement that Review Solutions was an agent of Defendants. (*Id.*).

However, the Court finds that the allegations in the Complaint, when taken as true, are sufficient at this stage in the proceedings to support the conclusion that Review Solutions had some form of an agency relationship with Defendants. For example, Plaintiff alleges that Review Solutions approached Plaintiff as an agent of Defendants to resolve Plaintiff's claim against

8

Defendants for the cost of the surgery. (Compl. ¶¶ 23–24). Moreover, the Agreement itself states that Defendants were the "Client/Payor" of Review Solutions, (*see* Agreement), which with more evidence may later indicate that an agency relationship existed between Defendants and Review Solutions. While the Court may ultimately conclude that Review Solutions was not an agent of Defendants, it would nevertheless be premature to make such a determination at this early stage of the proceedings and in the absence of discovery. Accordingly, the Court rejects Defendants' first argument.

2. <u>Intent to be Bound</u>

In their second argument, Defendants correctly point out that the parties must "manifest an intention to be bound" for an agreement to be enforceable under New Jersey law. *See Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992). Defendants argue that they were not obligated to abide by the Agreement and pay Plaintiff the agreed upon $31,055.20, because the second paragraph of the Agreement states that "this agreement does not constitute, nor should it be construed as a guarantee of benefit payment by [Defendants]." (ECF No. 8-3 at 9).

Though Plaintiff did not address it, the Court is nevertheless unconvinced by Defendants' argument. As the Third Circuit has explained, contracts must be read as a whole, rather than in isolation. *See Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011) (citing *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 100–102 (2009)). Here, Defendants' interpretation of the second paragraph of the Agreement cannot be reconciled with the language of the first paragraph, which specifically states that Plaintiff would "accept the Agreed Amount" of $31,055.20 "as payment in full for claims/bills," and would further agree to "reduce the liability of the Patient and [Defendants]." (*See* Agreement). When construing the Agreement as a whole, contrary to Defendants' interpretation, the first paragraph can be properly

understood as Plaintiff's acceptance of a settlement payment in exchange for the withdrawal of his claim against Defendants for the cost of the surgery, and the second paragraph merely clarifies that said payment is not for benefits under Patient's plan. At the very least, it would be more appropriate to interpret this language and the surrounding circumstances at summary judgment, after the parties have had the benefit of discovery. Accordingly, the Court rejects both of Defendants' arguments and finds that Count One survives Defendants' Motion to Dismiss.

### C. Breach of Implied Contract

"An implied-in-fact contract . . . is a true contract arising from mutual agreement and intent to promise, but in circumstances in which the agreement and promise have not been verbally expressed." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004) (quoting *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987)). Therefore, in order to survive a motion to dismiss, Plaintiff must plead the elements of a contract claim: "(1) the parties entered into a valid contract, (2) the defendant did not perform his or her obligations under the contract, and (3) the plaintiff suffered damages as a result." *Days Inn Worldwide, Inc. v. Shara & Sons, Inc.*, No. 13-1049, 2013 WL 5535959, at *3 (D.N.J. Oct. 7, 2013) (quoting *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007)).

This Court has recently considered a nearly identical case in which it determined at the motion to dismiss stage that a healthcare provider sufficiently alleged the existence of an implied contract when the provider rendered services in reliance on the insurance company's preauthorization of medical services. *See Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, No. 18-10036, 2018 WL 6445593, at *5 (D.N.J. Dec. 10, 2018). Similar to that case, Plaintiff here has alleged that: (1) the parties entered into an implied contract based on Defendants' course of conduct; (2) Defendants failed to pay Plaintiff the reasonable and fair amount for the services

rendered; and (3) Plaintiff suffered damages as a result. (Compl. ¶¶ 29–35). Irrespective of any questions regarding the exact terms of this implied contract, Plaintiff's allegations at this early stage are sufficient to entitle Plaintiff to discovery to further prove his claim. *See Comprehensive Spine Care, P.A.*, 2018 WL 6445593, at *5 (concluding same). Accordingly, Count Two survives Defendants' Motion to Dismiss.

### D. Promissory Estoppel

A claim for promissory estoppel under New Jersey law requires a showing of the following elements: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it[;] (3) reasonable reliance; and (4) definite and substantial detriment." *Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011) (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders*, 194 N.J. 223, 253 (2008)). Here, Plaintiff sufficiently alleges that Defendants promised to pay him for the surgical services to be rendered at a "fair and reasonable rate," Plaintiff relied on this promise by performing the surgery, and Plaintiff suffered damages by Defendants' refusal to pay. (Compl. ¶¶ 37–39). Therefore, the Court concludes that Plaintiff has established a *prima face* claim for promissory estoppel and Court Three survives dismissal. *See E. Coast Advanced Plastic Surgery v. Aetna, Inc.*, No. 17-13676, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018) (finding that the plaintiff provider sufficiently alleged promissory estoppel "because upon pre-authorizing the procedures, [the defendant] should have understood that it was reasonable for Plaintiff to rely on the representations . . which Plaintiff relied on to its detriment").

### E. Account Stated

"A claim for account stated is similar to a claim for breach of contract, and requires a plaintiff to prove that there is an 'exact and definite balance' for goods delivered or services rendered that can be proven by a statement of account." *Progressive Freight, Inc. v. Framaur*

*Assoc., LLC*, No. 16-9366, 2017 WL 3872327, at *3 (D.N.J. Sept. 5, 2017) (quoting *Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *5 (D.N.J. Jan. 22, 2013)). Here, Plaintiff claims that: (1) he submitted a bill and request for payment to Defendants after he completed Patient's surgery; (2) Defendants acknowledged receipt of the bill, paid a small portion, and made no other objection to the billed amount; and (3) Defendants' refusal to pay the remaining balance caused Plaintiff to suffer damages. (Compl. ¶¶ 41–44). As the Court has already found that Plaintiff sufficiently alleged his claims for breach of contract, breach of implied contract, and promissory estoppel, the Court similarly finds that Plaintiff has sufficiently alleged a claim for account stated. *See E. Coast Advanced Plastic Surgery*, 2018 WL 3062907, at *3 (holding plaintiff provider sufficiently alleged account stated claim, reasoning that, "in pleading adequately the breach of contract and promissory estoppel claims, it follows that the parties' conduct may show mutual agreement as to the exact and definite amount [defendant insurer] owes Plaintiff"). Accordingly, Count Four survives Defendants' Motion to Dismiss.

**F. Quantum Meruit**

The doctrine of *quantum meruit* "is applied when, absent a manifest intention to be bound, one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust." *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 76 (D.N.J. 2018) (citing *Kas Oriental Rugs, Inc. v. Ellman*, 394 N.J. Super. 278, 286 (App. Div. 2007)). "A plaintiff makes out a proper claim for *quantum meruit* when it pleads that 'services were performed with an expectation that the beneficiary would pay for them, and under circumstances that should have put the beneficiary on notice that the plaintiff expected to be paid.'" *Manley Toys, Ltd.*, 2013 WL 244737, at *6 (quoting *Weichert Co. Realtors*, 128 N.J. at 438).

Here, Plaintiff claims that: (1) he provided Patient with a "medically-necessary medical service[]"; (2) "Defendants agreed to pay the fair and reasonable rates for" that service; (3) Defendants did not pay the full amount for the service performed for Patient; and (4) Plaintiff suffered damages. (Compl. ¶¶ 46–51). However, the Court agrees with Defendants that an insurance company does not derive a benefit from services provided for an insured for purposes of a *quantum meruit* claim. *See Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-2775, 2012 WL 762498, at *5 (D.N.J. Mar. 6, 2012) (stating same) (citations omitted). In light of this finding, the Court concludes that Plaintiff cannot establish a *prima facie* claim for *quantum meruit* and that Count Five must therefore be dismissed.

## IV. CONCLUSION

For the aforementioned reasons, the Court hereby grants Defendants' Motion to Dismiss to the extent that it seeks to dismiss Count Five, but denies Defendants' Motion to the extent that it seeks to dismiss all other claims. An appropriate Order follows this Opinion.

Dated: February 19th, 2019.

JOSE L. LINARES
Chief Judge, United States District Court